1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SMILEY JAMES HARRIS<br>a/k/a JAMES LaVELL HARRIS,<br><br>          Plaintiff,<br><br>   v.<br><br>LAKE COUNTY JAIL; et al.,<br><br>          Defendants.<br>_____/ | No. C 09-3168 SI (pr)<br><br>**ORDER OF SERVICE** |

## INTRODUCTION

      Smiley James Harris a/k/a James LaVell Harris, formerly an inmate at the Lake County Jail, filed a pro se civil rights action under 42 U.S.C. § 1983.   Before the court reviewed his complaint, he filed a first amended complaint.  His first amended complaint supersedes the complaint and is now before the court for review under 28 U.S.C. § 1915A.

## BACKGROUND

      In his first amended complaint, Harris complained about the response of officials at the Lake County Jail to his medical problems since his arrival at the jail on January 15, 2009.  He alleged the following in his first amended complaint:

      Before his incarceration, Harris was awarded SSI benefits in December 2005 for his conditions of antisocial personality disorder and degenerative disk disease in his spine.  First Amended Complaint, p. 5.  He claims to be a disabled individual under the Americans With Disabilities Act. Id.  Harris had chronic pain caused by his degenerative disk disease for which

he needed to consume marijuana on a daily basis.  Without his daily use of medical marijuana, his "pain levels increase so as to prevent [him] from standing and/or walking without experiencing extreme pain." Id.  His Christian Fundamentalist religious beliefs prohibited the use of narcotics and pharmaceuticals for the treatment of his chronic pain.  At the jail, he unsuccessfully asked to be allowed to use medical marijuana, to be provided with a wheelchair, and to receive a "no standing" chrono (i.e., a permission slip) that would excuse him from having to stand for the twice daily standing count at the jail.[1]

On January 16, 2009, a day after his arrival at the jail, Harris saw family nurse practitioner K. C. Grisby and informed her of his chronic low back pain caused by his degenerative disk disease and told her of his need for medical marijuana to treat that pain. Grisby denied his request for medical marijuana.  Grisby also denied his alternative requests for use of a wheelchair and a "no standing" chrono.  First Amended Complaint, p. 8.  Harris was offered narcotic and pharmaceutical pain medications as an alternative, but he refused them based on his religious beliefs.  Because his requests were denied, he had to crawl on the concrete floor of the jail and had shooting pains in his knees.  He had already received chronos allowing him to be housed on the lowest floor and on the lower bunk in any cell, but was refused the additional requested accommodations by medical staff.

Harris alleged that defendants R. Howe, K. C. Grisby, Alishia Stottsberry and Kirk Andrews responded with deliberate indifference to his medical needs in that they (1) refused to allow him to have medical marijuana to treat his chronic pain, (2) refused to provide him a

---

[1]Jail employees apparently believed Harris was trying to game the system to obtain marijuana in jail.  In another one of the several actions he filed in this court, Harris v. State of California, Case No. C 09-3257 SI, Harris attached to his petition documents from a state court action he had filed concerning, among other things, his medical needs and requests for accommodations.  Those records include a declaration from a nurse and from a captain at the jail.  The nurse declared that Harris was unreceptive to *any* medical care other than his desired marijuana and did not have any condition that prohibited him from walking.  A captain at the jail declared that the jail staff had not refused any reasonable accommodation because the medical staff stated that Harris did not have any disabling condition that required the use of a wheelchair. Nonetheless, jail transportation officers allowed Harris to use a wheelchair when making court appearances "to prevent Mr. Harris from causing a disturbance in the Courthouse by insisting on crawling on the floor, and to prevent dangerous distractions while transporting multiple inmates." Howe Decl., p. 3.

**United States District Court**
For the Northern District of California

1  wheelchair, and (3) refused to provide him with a  "no standing" chrono.  He also alleged that

2  these wrongful acts occurred because of Lake County Sheriff Rodney Mitchell's failure to

3  properly train, supervise and/or instruct his employees and agents; and/or his failure to modify

4  and/or enact policies at the Lake County Jail.

5      Harris also asserted that various ill consequences resulted from the medical staff's

6  decisions. For example, correctional officers refused to provide him with a wheelchair so he had

7  to move about the jail by crawling, he was repeatedly disciplined for failing for participate in the

8  twice daily standing inmate count, he lost privileges as a result of the disciplinary actions, and

9  he lost time credits as a result of the disciplinary actions.   Harris was released from the jail after

10  filing this action.

11

12                                **DISCUSSION**

13      A federal court must engage in a preliminary screening of any case in which a prisoner

14  seeks redress from a governmental entity or officer or employee of a governmental entity.  See

15  28 U.S.C. § 1915A(a).  In its review the court must identify any cognizable claims, and dismiss

16  any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted,

17  or seek monetary relief from a defendant who is immune from such relief.   See id. at

18  1915A(b)(1),(2).  Pro se pleadings must be liberally construed.  See Balistreri v. Pacifica Police

19  Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

20

21  A.    Deliberate Indifference To Medical Needs

22      To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements:  (1) that

23  a right secured by the Constitution or laws of the United States was violated and (2) that the

24  violation was committed by a person acting under the color of state law.  See West v. Atkins,

25  487 U.S. 42, 48 (1988).

26      When an inmate alleges that his medical care has been constitutionally inadequate, he

27  must allege two things to state a claim: (1) a serious medical need and (2) deliberate indifference

28  to that need by prison officials.  See McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir.

**United States District Court**
For the Northern District of California

1992), <u>overruled on other grounds</u>, <u>WMX Technologies, Inc. v. Miller</u>, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).   Liberally construed, the first amended complaint states a cognizable § 1983 claim against defendants R. Howe, K.C. Grisby, Alishia Stottsberry, Kirk Andrews and Rodney Mitchell for deliberate indifference to Harris' serious medical needs.  These individuals allegedly denied his request for medical marijuana to treat his chronic pain, refused to provide a wheelchair for him, and refused to provide a "no standing" chrono.

The first amended complaint does not state a claim against the custodial officers who acted in accordance with the medical staff's determinations.  The members of the custodial staff did not deny Harris access to medical care, but instead acted in accord with the determinations of the medical staff.  <u>See, e.g.</u>, First Amended Complaint, p. 9 ("custodial staff says that because medical staff will not issue the 'chrono' that I must 'stand' for the count or be prosecuted.")

B.    <u>ADA Claim</u>

Title II of the Americans with Disabilities Act of 1990, 42 U.S.C.§ 12101 <u>et seq.</u> (ADA), provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  To state a claim under Title II of the ADA, the plaintiff must allege four elements: (1) the plaintiff is an individual with a disability; (2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) the plaintiff was either excluded from participation in or denied the benefits of the public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability. <u>Thompson v. Davis</u>, 295 F.3d 890, 895 (9th Cir. 2002). Although § 12132 does not expressly provide for reasonable accommodations, the implementing regulations provide that "[a] public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of

United States District Court
For the Northern District of California

the service, program, or activity."  28 C.F.R. § 35.130(b)(7).  The duty to provide "reasonable accommodations" or "reasonable modifications" for disabled people under Title II of the ADA arises only when a policy, practice or procedure discriminates on the basis of disability.  Weinreich v. Los Angeles County MTA, 114 F.3d 976, 979 (9th Cir. 1997).

Harris claimed that the defendants refused to provide reasonable accommodations for him as a disabled person.  The ADA claim has two problems.  The first problem is the defendant problem.  The defendants were sued in their individual and official capacities.  None of the defendants has liability in his or her individual capacity for the alleged ADA violation.  See Vinson v. Thomas, 288 F.3d 1145, 1156 (9th Cir. 2002), cert. denied, 537 U.S. 1104 (2003).  The claim against the defendants in their individual capacities would have to be dismissed.  The only basis on which ADA liability would exist would be to the extent the defendants were acting in their official capacity.  A suit against a person in his official capacity is considered to be a suit against the entity of which the officer is an agent.  See Kentucky v. Graham, 473 U.S. 159, 165 (1985).  For example, naming the sheriff or captain of the jail in his official capacity would be considered a suit against Lake County as the operator of the jail.

The second problem with the ADA claim concerns the remedy.  In his first amended complaint, Harris requested damages and injunctive relief.  Monetary damages are not available under Title II of the ADA absent a showing of discriminatory intent.  See Ferguson v. City of Phoenix, 157 F.3d 668, 674 (9th Cir. 1998).  To show discriminatory intent, a plaintiff must establish deliberate indifference by the public entity.  Duvall v. County of Kitsap, 260 F.3d 1124, 1138 (9th Cir. 2001).  Harris did not allege discriminatory intent by the public entity, so damages would not be available as a remedy to him if he prevailed on his ADA claim.  That leaves injunctive relief as the only remedy, but Harris' release from jail made that moot.  When an inmate is released from prison or transferred to another prison and there is no reasonable expectation nor demonstrated probability that he will again be subjected to the prison conditions from which he seeks injunctive relief, the claim for injunctive relief should be dismissed as moot.  See Dilley v. Gunn, 64 F.3d 1365, 1368-69 (9th Cir. 1995); Darring v. Kincheloe, 783 F.2d 874, 876-77 (9th Cir. 1986); see also PUC v. FERC, 100 F.3d at 1459 (federal court cannot

issue declaratory judgment if claim is moot).  The ADA claim is dismissed as moot.

## CONCLUSION

For the foregoing reasons,

1.     The first amended complaint states a claim for relief under 42 U.S.C. § 1983 against defendants Rodney Mitchell, Kirk Andrews, Alishia Stottsberry, K. C. Grisby, and Robert Howe for deliberate indifference to Harris' medical needs in violation of his Eighth Amendment right to be free from cruel and unusual punishment.  All other defendants and claims are dismissed.

2.     The clerk shall issue a summons and the United States Marshal shall serve, without prepayment of fees, the summons, a copy of the amended complaint and a copy of all the documents in the case file upon the following defendants who apparently work at the Lake County Jail ("LCJ"):

- Rodney Mitchell (sheriff of Lake County)
- Kirk Andrews, M.D. (medical director of LCJ Medical Services Program)
- Alishia Stottsberry, R.N. (medical program manager at LCJ)
- K.C. Grisby, F.N.P. (LCJ Medical Services Program)
- Robert Howe (captain at LCJ)

3.     In order to expedite the resolution of this case, the following briefing schedule for dispositive motions is set:

a.     No later than **May 28, 2010**, defendants must file and serve a motion for summary judgment or other dispositive motion.  If defendants are of the opinion that this case cannot be resolved by summary judgment, they must so inform the court prior to the date the motion is due.

b.     Plaintiff's opposition to the summary judgment or other dispositive motion must be filed with the court and served upon defendants no later than **July 2, 2010**.  Plaintiff must bear in mind the following notice and warning regarding summary judgment as he prepares his opposition to any summary judgment motion:

The defendants may make a motion for summary judgment by which they seek to have your case dismissed.  A motion for summary judgment under Rule 56 of the Federal

United States District Court
For the Northern District of California

Rules of Civil Procedure will, if granted, end your case [. . .] a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact -- that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case.  When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says.  Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendants' declarations and documents and show that there is a genuine issue of material fact for trial.  If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you.  If summary judgment is granted, your case will be dismissed and there will be no trial.  (See Rand v. Rowland, 154 F.3d 952, 962-63 (9th Cir. 1998).)

         c.     If defendants wish to file a reply brief, the reply brief must be filed and served no later than **July 16, 2010**.

        4.     All communications by plaintiff with the court must be served on a defendant's counsel by mailing a true copy of the document to defendant's counsel.  The court may disregard any document which a party files but fails to send a copy of to his opponent.  Until a defendant's counsel has been designated, plaintiff may mail a true copy of the document directly to defendant, but once a defendant is represented by counsel, all documents must be mailed to counsel rather than directly to that defendant.

        5.     Discovery may be taken in accordance with the Federal Rules of Civil Procedure. No further court order under Federal Rule of Civil Procedure 30(a)(2) or Local Rule 16 is required before the parties may conduct discovery.

        6.     Plaintiff is responsible for prosecuting this case.  Plaintiff must promptly keep the court informed of any change of address and must comply with the court's orders in a timely fashion.  Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).  Plaintiff must file a notice of change of address in every pending case every time he is moved to a new facility.

/  /  /

/  /  /

7

7.      Plaintiff is cautioned that he must include the case name and case number for this case on any document he submits to this court for consideration in this case.

IT IS SO ORDERED.

Dated: April 1, 2010

_____
SUSAN ILLSTON
United States District Judge

United States District Court
For the Northern District of California

8