**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SMILEY JAMES HARRIS<br>a/k/a JAMES LAVELL HARRIS,<br><br>    Plaintiff,<br><br>    v.<br><br>LAKE COUNTY JAIL; et al.,<br><br>    Defendants.<br>_____/ | No. C 09-3168 SI (pr)<br><br>**ORDER GRANTING SUMMARY JUDGMENT MOTIONS** |

## INTRODUCTION

This is a federal civil rights action filed by a pro se state prisoner pursuant to 42 U.S.C. § 1983. Smiley James Harris ("Harris") complains he did not receive medical marijuana for his back pain while he was incarcerated at Lake County Jail in Lakeport, California. Now before the court for consideration are two defense motions for summary judgment. Medical staff defendants Andrus, Stottsberry, and Grisby ("medical defendants") urge in their motion that they are entitled to judgment as a matter of law on the merits of plaintiff's claim. Correctional staff defendants Mitchell and Howe ("correctional defendants") urge in their separate motion that they are entitled to judgment as a matter of law because the action is barred by res judicata, as well as on the merits of plaintiff's claim and their defense of qualified immunity. Plaintiff opposes both motions. For the reasons discussed below, defendants' motions for summary judgment will be GRANTED. Judgment will be entered in favor of defendants.

## BACKGROUND

The following facts appear to be undisputed. Harris arrived at Lake County Jail on January 15, 2009. (First Amended Complaint ("FAC") at 5.) He claims he has degenerative disk disease and that in 2001, the Richmond Health Clinic gave him a "lifetime" recommendation for the use of medical marijuana for the treatment of "chronic low back pain." (Id.) Harris further claims that, absent daily marijuana use, he cannot stand or walk without extreme pain. (Id.)

On January 16, 2009, Harris was seen by defendant Nurse K.C. Grisby ("Grisby"). (FAC at 8.) Harris informed her of his purported chronic back pain caused by degenerative disk disease. (Id.) Harris also informed Grisby of his purported lifetime recommendation for marijuana use, and he requested access to and use of medical marijuana. (Id.) This request was denied. (Id.) Harris also requested use of a wheelchair as well as a "no-standing" chrono, which were both denied. (Id.) While Harris was offered alternative pain medications, he refused them based on religious belief. (Id.) Harris claims that because his requests were denied, he had to crawl on the floor of the jail and suffer shooting pains in his knees. (Id. at 9.) Harris did receive chronos allowing him to be housed on the lowest floor and lower bunk of any cell, but was refused the additional requested accommodations. (Id.)

Harris alleges in the instant action that defendants Robert Howe ("Howe"), Kirk Andrus ("Andrus"), Alishia Stottsberry ("Stottsberry"), and Grisby responded with deliberate indifference to his medical needs. (Id. at 10.) Defendant Howe is a correctional officer at Lake County Jail, and defendants Grisby, Stottsberry, and Andrus are medical service providers at the Jail. (Id. at 6-7.) Harris also alleges that these wrongful acts occurred because defendant Rodney Mitchell ("Mitchell") failed to properly train, supervise, and/or instruct his employees and agents; and/or failed to modify or enact policies at Lake County Jail. (Id. at 10.) Defendant Mitchell is the Lake County Sheriff. (Id. at 5.)

On April 1, 2010, the court found the FAC stated a cognizable claim for deliberate indifference to Harris' medical needs in violation of the Eighth Amendment. (Docket No. 8.)

2

**VENUE AND JURISDICTION**

Venue is proper in the Northern District of California because the events or omissions giving rise to the claims occurred in Lake County, which is located within the Northern District. See 28 U.S.C. §§ 84, 1391(b). This court has federal question jurisdiction over this action brought under 42 U.S.C. § 1983. See 28 U.S.C. § 1331.

**LEGAL STANDARD FOR SUMMARY JUDGMENT**

Summary judgment is proper where the pleadings, discovery, and affidavits show that there is "no genuine issue as to any material fact and [that] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A fact is material if it might affect the outcome of the suit under governing law, and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Generally, as is the situation with defendants' challenge to the Eighth Amendment claim, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. The burden then shifts to the nonmoving party to "go beyond the pleadings, and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324.

A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence. See Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746, plaintiff stated under penalty of perjury that contents were true and correct,

3

and allegations were not based purely on his belief but on his personal knowledge). Here, the complaint was not verified, and therefore is not considered as evidence for purposes of deciding the motion.

The court's function on a summary judgment motion is not to make credibility determinations nor to weigh conflicting evidence with respect to a disputed material fact. See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. Id. at 631.

**DISCUSSION**

Deliberate indifference to a prisoner's serious medical needs amounts to cruel and unusual punishment prohibited by the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). A prison official violates the Eighth Amendment only when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious, and (2) the official is, subjectively, deliberately indifferent to the inmate's health or safety. See Farmer v. Brennan, 511 U.S. 825, 834 (1994). Accordingly, evaluating a claim of deliberate indifference necessitates examining "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" Id. (quoting Estelle, 429 U.S. at 104). A prison official exhibits deliberate indifference when he or she knows of and disregards a substantial risk of serious harm to inmate health. See Farmer, 511 U.S. at 837. The official must both know of "facts from which the inference could be drawn" that an excessive risk of harm exists, and he or she must actually draw that inference. Id. A mere difference of opinion as to which medically acceptable course of treatment should be followed does not establish deliberate indifference. See Sanchez v. Vild, 891 F.2d 240, 242 (9th

Cir. 1989). Where doctors have chosen one course of action and a prisoner-plaintiff contends that they should have chosen another course of action, the plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances, . . . and the plaintiff must show that they chose this course in conscious disregard of an excessive risk to plaintiff's health." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (internal citations omitted).

A.   Serious Medical Needs

The Eighth Amendment claim requires that there be an objectively serious medical need. Harris does not, however, provide sufficient evidence to allow a reasonable jury to find that he suffered degenerative disk disease or any other medical condition making it impossible for him to walk without the use of marijuana. Pointing to Harris' medical records, medical defendants deny that Harris suffered from a serious medical need. Specifically, Harris received a diagnostic MRI of his lumbar spine in February 1999. (MSJ, Declaration of Jerome M. Varanini ("Decl. Varanini"), Ex. B at 019.) While the radiologist noted some "extremely minor disc bulging," he concluded that "there [was] no evidence of significant central canal stenosis or foraminal compromise." (Id.)

Medical defendants also point to the observations of medical staff at Lake County Jail. Specifically, Harris arrived at the jail on January 15, 2009 and was placed in the "sobering cell." (MSJ, Declaration of Alishia Stottsberry, R.N. ("Decl. Stottsberry") at ¶ F; id., Ex. A at 036.) He was seen by medical staff at 2200 hours and released from the sobering cell approximately 24 hours later on January 16, 2009 at 2300 hours. (Id.) Defendant Nurse Grisby saw Harris for a "sick call" that same day and noted that he was "walking smoothly." (Decl. Stottsberry, Ex. A at 035.) When Harris was next seen on January 20, 2009, Nurse Grisby noted that he was crawling. (Id.) When asked if anything had happened to him, Harris responded that nothing had happened, but that he had previously been able to walk on January 16, 2009 because the marijuana he had used prior to his incarceration on January 15, 2009 had not yet worn off. (Id.) Defendant Dr. Andrus examined Harris on May 15, 2009 and determined that the exam was

within normal limits ("WNL") except for Harris' refusal to sit upright or stand as a result of his reported pain that "he refuse[d] to quantify." (Id. at 044.) Dr. Andrus noted that Harris' belief that marijuana would "decrease his pain and allow him to walk" was "more psychologically based" and that Harris was "not dealing with reality." (Id.) The medical records also show that Harris regularly refused offers for Ibuprofen, refused to have his vital signs taken, refused to permit x-rays to test for tuberculosis, refused to attend sick calls, and at times refused to discuss anything other than marijuana. (Id. at 031-046.)

On July 6, 2009, Harris was seen for medical clearance for his disciplinary diet and needed to have his weight taken. (Id. at 040.) Observation notes by defendant Nurse Stottsberry recorded that Harris " . . . moves gracefully and sits on the small platform while NP adjusts the scale . . . w/o [without] moaning or grimacing, then rolls off the scale and gracefully moves up to the bed w/o [without] going onto his knees." (Id.) An earlier weigh-in on June 2, 2009 similarly reported that Harris "moves gracefully turning to sit on the scale and then twists around off the scale – movement is smooth w/o [without] moaning or grimacing." (Id. at 043.) Similar exercises on May 1, 2009 and July 10, 2009 show that Harris was cooperative. (Id. at 034, 039-040.)

Medical defendants submit an expert declaration from John Levin, M.D., a medical doctor experienced in the treatment of patients with spinal complaints, complaints of low back pain, and reported mobility limitations. (MSJ, Declaration of John Levin, M.D. ("Decl. Levin") at ¶ 1.) Levin reviewed Harris' jail medical charts, 1999 MRI report, and records from Harris' 2005 Social Security disability hearing. (Id. at ¶¶ 2-3.) In his determination, the MRI – which appears to be the only objective test performed on Harris' spine – did "not demonstrate the existence of any spinal condition that would serve as an objective, physiologic basis for complaints of severe, debilitating pain sufficient to prevent a patient from standing or walking." (Id. at ¶ 3.) Dr. Levin concluded that Harris' testing showed an "essentially normal" spine. (Id. at ¶ 4.)

Dr. Levin also opined on Harris' explanation that he was able to walk on January 16, 2009 as attributable to the marijuana still being in his system from his use prior to his January

15, 2009 admission to Lake Country Jail. (Decl. Levin ¶¶ 6-7.) Dr. Levin determined that any effects of the marijuana "would have dissipated prior to the time of the sick call observation on January 16, 2009." (Id. at ¶ 7.) On the basis of the MRI report, Mr. Harris' ability to walk on January 16, 2009, and later observations showing that Harris could move on and off the scale in his cell, Dr. Levin concluded that "there was no medical basis for the plaintiff's claim to need medical marijuana to be able to stand and walk at the Lake County Jail in 2009." (Id. at ¶ 11.) Plaintiff produces no evidence to dispute this evaluation nor the evidence supporting it. His claim of immobilizing back pain is based entirely on self-reporting in his unverified complaint with no support in the record. Harris does not raise a triable issue of fact with his statements because he does not present any evidence that he has the requisite medical expertise to diagnose himself with disk disease or assess treatment modalities.

Medical defendants also point out that Harris had no current prescription nor valid recommendation for the use of medical marijuana at the time of his incarceration in 2009. (Med. Defs.' Mot. for Summ. J. at 12.) While Harris claims to have a "lifetime" prescription (FAC at 3, 5), he provides no evidence. Indeed, as medical defendants point out, jail medical staff sent a request for Harris' records to the Richmond Health Center, which Harris indicated was the source of his prescription. (Decl. Stottsberry at ¶ B; id., Ex. A at 090-094.) The records received in response do not support Harris' claim for a valid prescription. (Id.) The clinic did not give a diagnosis and did not provide Harris with a medical marijuana recommendation. (Id.) To the contrary, records of Harris' contact with the clinic in 2007 show that he threatened legal action for their failure to provide verification of a lifetime recommendation. (Id. at 090.) Furthermore, medical defendants point out that California's Compassionate Use Act disallows prescriptions for lifetime use and instead requires annual, updated documentation for the authorized use of prescription marijuana. See Cal. Health & Safety Code § 11362.75(a)(2).[1]

---

[1] Medical defendants submit documents produced by Harris in response to defendants' document request. (Decl. Varanini, Exs. A-B.) Included therein are two pages appearing to be separate 2002 and 2003 physician statements recommending the use of medical cannabis for Harris. While the word "lifetime" is included on each statement, it appears, as medical defendants point out, that this was inserted by someone other than the signing physician. (Id., Ex. B at 023-024.) Indeed, the first of these documents specifically states that the maximum time period covered is "2 years," precluding the

7

Again, Harris produces no evidence to dispute these points.

Two of Harris' arguments warrant separate discussion. First, Harris argues that he was receiving disability benefits at the time of his 2009 incarceration (FAC at 5), presumably as evidence of his serious medical need. But a review of Harris' SSI disability hearing record only undermines his claim. As medical defendants point out, Harris ultimately received SSI benefits for a personality disorder, not for back pain. (Decl. Varanini, Ex. B at 03-018.) In fact, Harris' various claims for benefits triggered a comprehensive review and analysis of his quest for marijuana by the Administrative Law Judge ("ALJ"). (Id.) By way of example, psychiatric and psychological consults in 1996, 1999, and 2000 resulted in diagnoses of anxiety reaction, antisocial personality disorder, "subjective" low back pain, narcissistic features, and attention deficit disorder. (Id. at 09-010.) On January 23, 2001, Harris was evaluated by Dr. Richard Hudson, a psychiatrist. (Id. at 010.) The ALJ noted that the apparent purpose of the exam was an attempt by Harris "to obtain a prescription for medical marijuana" based on a reported "aversion to manmade medications." (Id. at 010.) The request was denied, and Dr. Hudson recommended psychotherapy. (Id.) Later diagnoses continued to include depressive, paranoid, and personality disorders, and one psychiatrist in 2004 reported that Harris was smoking marijuana to deal with chronic anger and impulsivity. (Id. at 011-013.) The ALJ, after reviewing these reports and Harris' 1999 MRI, concluded that there was no evidence that Harris' reported back pain was severe. (Id. at 013.) The ALJ also noted that "seeking and using marijuana is a major component of [plaintiff's] life" and "there is nothing in the medical evidence except [plaintiff's] own complaints that document any physical limits." (Id. at 013-014.) Harris offers no evidence to dispute the ALJ's report nor the professional evaluations therein.

---

possibility of a "lifetime" prescription. (Id. at 023.) The court also notes that the 2002 form is incomplete as it is missing a check mark next to the box actually recommending medical cannabis, and the date appears under the insertion of the word "Lifetime" as opposed to the line provided for the "Date of Statement." (Id.) Similarly, the date of the 2003 statement appears to have been scratched out and modified. (Id. at 024.) In any event, the Richmond Health Clinic did not produce these documents to the Jail, (See Decl. Stottsberry, Ex. A), and they therefore cannot serve as evidence of defendants' deliberate indifference. See Farmer, 511 U.S. at 837.

Second, Harris relies heavily on a 2006 California appellate opinion finding in his favor. Specifically, in People v. Harris, 145 Cal. App. 4th 1456 (2006), Harris appealed a 2005 conviction for commission of a felony in violation of Cal. Penal Code § 4573.5, based on his bringing medical marijuana without authorization into a county correctional facility, where he was to begin serving a sentence in an unrelated matter. As in the instant case, Harris sent a letter to county officials prior to his surrender advising them that he was a qualified patient and requesting an accommodation for him to use medical marijuana. Id. at 1460. He was nonetheless searched and charged with a felony offense upon his surrender to the jail. Id. At trial on the charge, the parties stipulated that Harris had a "doctor's card" authorizing him to use marijuana for personal medical purposes. Id. Nonetheless, the trial court convicted Harris of violating section 4573.5, which prohibits a person from bringing alcohol or drugs, "*other than controlled substances*" into a correctional facility. Id. (emphasis added). The state appellate court reversed the conviction, finding that medical marijuana was a "controlled substance," thereby excluding it from the statute's prohibition. Id. at 1462-63.

The court has considered People v. Harris and finds that it does not mandate a different result here. First, the appellate opinion does not constitute evidence of serious medical need. The opinion addressed a limited question of statutory construction, specifically whether medical marijuana authorized by Cal. Health & Safety Code §§ 11362.5, 11362.7 et seq. qualified as a "controlled substance" under Penal Code § 4573.5. The court made no findings regarding Harris' medical condition. And the parties only stipulated to the fact that Harris had a doctor's authorization for the use of medical marijuana, not the medical condition for which it was provided. Indeed, the only mention of Harris' condition in the entire opinion is a reference to the letter Harris sent to county authorities prior to his surrender, where he advised them that he used marijuana for "chronic pain." Id. at 1460.

Second, as addressed above, unlike his 2005 incarceration, Harris no longer had a current prescription for medical marijuana at the time of his 2009 incarceration. Indeed, as also addressed above, Lake County Jail personnel verified this by contacting the Richmond Health Clinic and sending a request for records. Accordingly, the marijuana that Harris sought during

9

his 2009 incarceration at Lake County Jail was not "medical marijuana" as authorized under California's Health & Safety Code, and was therefore not a "controlled substance" as defined by People v. Harris.  See People v. Harris, 145 Cal. App. 4th at 1462-63.

B.      Deliberate Indifference

Nor is there a triable issue of fact as to the subjective prong, as there is an absence of evidence that defendants acted with the deliberate indifference necessary for an Eighth Amendment claim. As detailed above, medical defendants requested Harris' records from the Richmond Health Center. (Decl. Stottsberry at ¶ B; id., Ex. A at 090-094.) The clinic did not provide a medical diagnosis or a prescription for marijuana use. (Id.) The records only showed that Harris had personally pressured a clinic doctor to provide proof of a purported lifetime prescription that the doctor could not verify. (Id. at 090.)

Further, as also detailed above, medical defendants gave Harris regular sick calls and other examinations, many of which he refused. (Decl. Stottsberry, Ex. A at 031-047.)  The results of these examinations, along with the medical defendants' observations of Harris, led them to conclude that his health was within normal limits. (Id.) Finally, medical defendants offered Harris alternative pain relief and "optional treatment modalities," including Ibuprofen, all of which he refused. (Id. at 034-035, 046.)[2] Indeed, defendant Nurse Stottsberry noted that she offered physical therapy or an exercise program on May 7, 2009, and Harris "refused to discuss or try anything except marijuana." (Id. at 046.) In sum, medical defendants have provided ample evidence that they did not perceive the situation to be a medical emergency and took reasonable measures to address Harris' medical care requests.

Regarding correctional defendants, the evidence also is undisputed that Sheriff Mitchell and Jail Commander Howe were not in charge of the medical department, did not make medical decisions, and did not direct medical staff in those decisions. (MSJ, Declaration of Robert Howe

---

[2] While Harris asserts that his religious beliefs prohibit the use of narcotics and pharmaceuticals (FAC at 5), the undisputed record shows that he did accept pharmaceutical drugs for an ear condition at Lake County Jail.   (Decl. Stottsberry, Ex. A at 021, 025-026, 032.)

10

("Decl. Howe") at ¶¶ 2, 4.) Correctional defendants were not involved in any decision to deny Harris medical marijuana, deny access to a wheelchair, or deny a "no standing chrono." (Id. at ¶¶ 4, 5.) Howe states in his declaration that in his role as Jail Commander, he reviewed all grievance forms. (Id. at ¶ 3.) In the case of Harris' inmate grievances, Howe contacted the jail medical staff. (Id. at ¶ 4.) Medical staff informed Howe that Harris did not suffer from any conditions requiring the use of a wheelchair or medical marijuana. (Id.) Medical staff further confirmed that a "no standing chrono" was not necessary. (Id.) Correctional defendants were not health care providers. They were faced with an inmate's assertion that he needed marijuana and accommodations for a back condition but also faced with professional evaluation that no such condition existed. Although normally the court draws all justifiable inferences in the non-movant's favor at the summary judgment stage, in disputed matters of professional judgment, the court's inferences must accord deference to the views of prison authorities. Beards v. Banks, 548 U.S. 521, 530 (2006). Harris has not shown that a correctional officer hearing a prisoner complaining of pain but aware that he was under the regular care of medical staff would believe there was any need to act.

C.   Res Judicata and Qualified Immunity

In light of the above finding that defendants are entitled to summary judgment on the merits of Harris' claim, the court need not reach correctional defendants' additional arguments that they are entitled to qualified immunity or that Harris' claim is barred by res judicata.

**CONCLUSION**

For the foregoing reasons, the court orders as follows:

1.   The motion for summary judgment filed by medical defendants Andrus, Stottsberry, and Grisby is GRANTED. (Docket No. 27.)

2.   The motion for summary judgment filed by correctional defendants Mitchell and Howe is GRANTED. (Docket No. 40.)

3.   Medical defendants' unopposed request for judicial notice of the California

11

Department of Justice Guidelines for the Security and Non-Diversion of Marijuana Grown for Medical Use is also GRANTED. (Docket No. 28.)

4. Correctional defendants' unopposed request for judicial notice of records from the state court habeas proceedings is also GRANTED. (Docket No. 40-4.)

5. Harris' unopposed request for judicial notice of records from the state court habeas proceedings (Docket No. 43, Docket No. 47, Exs. C, G) is also GRANTED. Harris' unopposed request for judicial notice of certified correspondence with Lake County, Lake County Jail inmate release forms, grievance forms, and disciplinary action reports as well as of a Lake County Sheriff's Department Narrative Report (Docket No. 47, Exs. A, B, D, E, F, H) is also GRANTED. Harris' unopposed request for judicial notice of his credentials of ministry (Docket No. 47, Ex. I) is DENIED as the information contained in the request is not of the sort that can be judicially noticed under Federal Rule of Evidence 201(b).

6. Judgment will now be entered in favor of all defendants and against plaintiff. The clerk shall close the file. All parties shall bear their own costs.

IT IS SO ORDERED.

Dated: May 2, 2011

_____
SUSAN ILLSTON
United States District Judge